**UNITED STATES of America, Plaintiff,**

v.

**Andre RUFFIN, Defendant.**

**No. 91–Cr–250.**

United States District Court,
E.D. Wisconsin.

Nov. 29, 1993.

Susan Knepel, Asst. U.S. Atty., Milwaukee, WI, for plaintiff.

David Berman, Milwaukee, WI, for defendant.

### *ORDER*

TERENCE T. EVANS, Chief Judge.

In a decision released on June 29, 1993, the United States Court of Appeals for the Seventh Circuit ordered that Andre Ruffin be resentenced. *United States v. Ruffin,* 997 F.2d 343 (7th Cir.1993).

When I originally sentenced Mr. Ruffin, on January 29, 1992, I ordered a total term of 27 years. I imposed the sentence, which admittedly was stiff, because I determined that Mr. Ruffin was a "career criminal" under the federal sentencing guidelines. The court of appeals has disagreed with that determination.

Mr. Ruffin made his return visit to my courtroom on November 22, 1993. After hearing from witnesses, Susan Knepel, the attorney for the government, and Mr. Ruffin's very able attorney, David Berman, I told the parties that I would issue my decision regarding the new sentence in writing as I suspected that the case would again be going to Chicago for further review. My decision follows.

On October 3, 1991, two men, wearing masks and gloves, entered the First Wisconsin Bank located at 2102 West Fond du Lac

Avenue in Milwaukee, Wisconsin. There were approximately 30 customers and employees in the bank at the time. Andre Ruffin was one of the two men. Mr. Ruffin displayed a dark metal revolver and pointed it at the head of a security guard, stating "Step out of the way." The hammer was pulled back on the revolver at the time Ruffin made his announcement. While Ruffin remained in the lobby area of the bank waving his firearm at customers and employees of the bank, his accomplice jumped over the teller station and took $6,902.92 from various tellers' drawers. The men fled the scene, and Ruffin was subsequently indicted by a grand jury 2 weeks later for the bank robbery and a second charge of using a firearm during a crime of violence.

Following a trial, where overwhelming evidence of Mr. Ruffin's guilt was presented to a jury, he was convicted on both counts. The trial took 4 days and culminated with the return of the jury's verdicts of guilty on December 10, 1991. Upon hearing the verdicts, Mr. Ruffin went into a rage and attempted to either escape or go after someone in the courtroom. A violent struggle erupted and, after about 3 or 4 minutes, Mr. Ruffin was placed under control by officers of the Marshal's Service. During the struggle, which occurred in the presence of a very frightened jury, a solid oak, 12-foot table crashed to the ground.

Mr. Ruffin returned to court for sentencing on January 29, 1992. Under the federal sentencing guidelines, Mr. Ruffin received 20 points for the base offense of robbery. Two points were added because the robbery was of a financial institution. His adjusted offense level, accordingly, was 22.

Mr. Ruffin had two prior convictions on his record as of January 29, 1992. The first conviction concerned a theft from the Hales Corners State Bank in Hales Corners, Wisconsin, on April 29, 1982. During that offense, Mr. Ruffin asked a teller at the Hales Corners State Bank for coin wrappers, and when she left her window to obtain them, Ruffin leaned over the counter and helped

himself to approximately $10,000 from the cash drawer. After seizing the money he fled from the bank. Mr. Ruffin's second conviction of record concerned a bank robbery of the Ohio Citizens Bank in Toledo, Ohio, on October 18, 1982. The Toledo bank robbery was closed out in federal court in Ohio in 1983 when Mr. Ruffin was convicted and sentenced to a term of 10 years in prison. The Hales Corners, Wisconsin, robbery was closed out in 1984 when Mr. Ruffin received a state sentence of 7 years to run concurrent with the Ohio federal sentence he was serving. Mr. Ruffin was paroled under the sentences imposed in both cases on December 9, 1988.

At the time of the October 3, 1991, robbery of the First Wisconsin Bank in this case, Mr. Ruffin was still on federal parole. Under the guidelines, Mr. Ruffin earned 3 points for each of the two prior felony convictions and 2 points for his status as a parolee at the time of the 1991 robbery. The 8 points thus accumulated put him in criminal history category 4. The guidelines, therefore, put Mr. Ruffin in level 22 for the robbery and in criminal history category 4 for his background. The guideline range was 63 to 78 months in prison.

When this case was before me for sentencing in 1992 I expressed the view that 63 to 78 seemed too lenient a range for robbery, especially one committed by a defendant on parole for other robberies.[1] I continue to hold to that view, and I continue to believe that judges who detect flaws in the guideline system should voice their concerns. With that said, I return to the task of fashioning an appropriate sentence for Mr. Ruffin in light of the mandate issued by the court of appeals.

In addition to the Hales Corners bank theft and the Toledo, Ohio, bank robbery, which resulted in convictions and points under the guidelines, I find, by a preponderance of the evidence, that Mr. Ruffin has been involved in many other criminal acts.

---

1. The sentencing range is almost double, 121 months to 151 months, for someone with no criminal record who is paid $500 by a drug dealer to pick up 10 pounds of cocaine in a gym bag and carry it from Racine to Milwaukee.

I find, by a preponderance of the evidence, that Mr. Ruffin has committed the following additional crimes.

(1) Mr. Ruffin committed a robbery at the Cudahy, Wisconsin, branch of the First National Bank on April 26, 1982. This offense was similar to the Hales Corners bank caper except that this one netted only $400. This crime was read into the record when Mr. Ruffin was sentenced in Milwaukee County circuit court for the Hales Corners robbery on June 4, 1984.

(2) Mr. Ruffin, along with two other men, attempted to rob an Open Pantry store in Milwaukee on May 23, 1981. According to a sworn criminal complaint filed on June 18, 1981, in Milwaukee County circuit court, Mr. Ruffin and two other men entered an Open Pantry store with the intent to commit robbery. Mr. Ruffin put his right hand in his coat pocket and stated to the store manager "Give me all the money or I'll blow your mother fucking head off."

A preliminary examination was held on the charge on July 21, 1981. The store manager, under oath, identified Mr. Ruffin as the robber. After hearing testimony, the court found probable cause that Mr. Ruffin committed the crime.

The charges were dismissed as a result of the plea agreement in the Toledo, Ohio, case in 1983.

(3) On June 17, 1982, three men, Andre Ruffin, Tyroynail Patterson, and Jerome Jackson, entered the Teutonia Avenue Postal Station in Milwaukee. One of the men struck postal clerk Betty Lewis with his hand, and she fell to the floor. All three men jumped onto the counter and obtained $1,135.38 from the clerk's drawer. Mr. Ruffin was implicated in the offense by a man named Harold Jewell. Jewell told postal inspectors that on June 17, 1982, he had a conversation with a Michael Tubbs. Mr. Tubbs told him that Roy, Michael, Andre, and Roonie had robbed the Teutonia post office that afternoon.

A federal grand jury found probable cause and returned an indictment against Mr. Ruffin for this offense. The indictment was dismissed as a part of the Ohio plea agreement.

(4) On June 18, 1982, five men entered the Hilltop Postal Station in Milwaukee. Three of the men approached postal clerk Lois Hobbs and asked the cost of 100 stamps. After she told them the cost, the men left because they did not have enough money to buy the stamps. At the same time, Andre Ruffin and another man approached another clerk, Barbara James, and asked about a post office box. One of the men asked for change for a $10 bill. When Ms. James opened her drawer, one man leaned over the counter and struck her, knocking her to her knees. Both men then grabbed money from her drawer. Lois Hobbs, after hearing the commotion, returned to her drawer and opened it up in order to activate the holdup camera. The two men from Barbara James's window then went to Lois Hobbs's window and reached over the counter, taking money and the holdup camera money clip activator. The men then fled. The assistant manager, Dale Nook, also observed the robbery.

After the robbery, Barbara James was shown a photospread containing five color photographs. She positively identified Andre Ruffin as one of the individuals that was at her window and one of the individuals who took moneys from her drawer. Further, she identified Andre Ruffin as the individual who hit and knocked her to the floor during the robbery. The assistant manager, Dale Nook, also positively identified Andre Ruffin.

Mr. Jewell was also interviewed. He told postal inspectors that on June 18, 1982, Andre Ruffin spoke with him. He said that Andre Ruffin, along with four other men, discussed going to the post office on 12th Street. They discussed who would go into the post office. It was ultimately decided after discussion that Ruffin and two others would go into the post office. Mr. Jewell told the inspectors that on June 18, 1982, Andre Ruffin and two other men entered the Hilltop Post Office and took moneys.

Mr. Ruffin was charged in a criminal complaint filed in this court. An indictment was subsequently returned charging

him with this offense. The indictment was dismissed as part of the plea agreement in Ohio.

Mr. Ruffin then traveled to Detroit, Michigan, where he committed two more crimes.

(5) On August 24, 1982, Mr. Ruffin committed a bank larceny at the Michigan National Bank in Detroit. He was identified by surveillance film, reaching over the counter and removing bank funds while the teller was away; $1,900 was taken.

(6) Mr. Ruffin was involved in a bank larceny at the Michigan National Bank in Detroit on August 31, 1982. Mr. Ruffin requested coin wrappers from a teller. When the teller left the counter to obtain the requested wrappers, Ruffin reached across the counter and removed bank funds from the teller drawer, which included a security dye pack. Upon leaving the bank, the security dye pack detonated, and Ruffin dropped the bank funds and fled in a 1974 Eldorado Cadillac. The defendant was identified by the victim teller as the robber.

The Detroit charges were dismissed as part of the Ohio plea agreement. The plea agreement, which Mr. Ruffin signed, stated on page 2:

> The United States Attorney's Office for the Southern District of Michigan will not file any charges against Andre Ruffin arising out of his participation in a theft from the Michigan National Bank branch at 3044 West Grand Boulevard, Detroit, Michigan, on August 24, 1982, and from his participation in a theft from the Michigan National Bank branch at 11640 Moran, Detroit Michigan, on August 31, 1982.

Mr. Ruffin then went to Ohio. In addition to the October 18, 1982, robbery of the Ohio Citizens Bank in Toledo, he committed the following:

(7) On October 13, 1982, Mr. Ruffin committed a theft at the Mid–American Bank in Toledo. The crime was committed in the same way as Mr. Ruffin committed the robbery at the bank in Hales Corners, Wisconsin. Mr. Ruffin was identified by the victim teller, was captured on bank surveillance film, and left a fingerprint on the money drawer.

(8) Mr. Ruffin committed the same type of crime on November 3, 1982, at the State Home Savings Bank in Bowling Green, Ohio. A teller at the bank, Jodi Buess, positively identified Mr. Ruffin as the robber at a lineup held on December 1, 1982.

These two Ohio offenses were alleged as separate counts in the Ohio indictment against Mr. Ruffin. They were dismissed as part of his plea agreement.

So, to summarize, Mr. Ruffin committed 10 serious felonies between May 23, 1981, and November 3, 1982. He was formally convicted on two charges, and eight others were dismissed as part of two separate plea agreements. In all, he robbed or attempted to rob seven banks, two postal stations, and a convenience store. I conclude, as I previously noted, that by a preponderance of the evidence (in fact, by much more than that) Mr. Ruffin committed all 10 offenses.

It is interesting to note that when he packaged up these 10 offenses in Ohio and Milwaukee, good things were anticipated from him. In Ohio, Mr. Ruffin's attorney told the judge at sentencing that Ruffin was "not incorrigible" and that "I don't think he will be in front of the court again" because counsel had observed "a tremendous change in this man's attitude." When Ruffin was sentenced on June 4, 1984, in Milwaukee, the judge told him that he hoped, after his term was completed, that Ruffin "will be able to conform his life to the rules that all the rest of us have to abide by." As things turned out, that was not to be.

After serving a portion of the concurrent sentences Mr. Ruffin received in state court in Milwaukee and federal court in Ohio, he was released on parole in December of 1988. In addition to the very serious armed bank robbery in this case (October 3, 1991, of the First Wisconsin Bank), I find by a preponderance of the evidence that he committed three additional crimes.

(1) On June 13, 1991, Rodney Robertson and Andre Ruffin entered Harvey Preuss Florists on Appleton Avenue in Milwaukee. Robertson had a dark handgun and pointed it at the clerk while saying, "Don't say anything, just give me the money." A

clerk responded, saying that she did not have any money. Robertson stated, "Just get the money." Fearing for her safety, the clerk went to the cash register and opened it. One of the men forced her to lie on the floor. The clerk then heard a noise like the robbers were trying to pull the cash drawer out. After a short time she heard one say, "Crawl to the back. Don't look back or we'll shoot you." Both employees crawled to the back of the store and waited until they heard the door, indicating that the robbers had left. Rodney Robertson admitted his involvement in the offense. He identified Andre Ruffin as his accomplice.

Because the statements of Mr. Robertson are against his personal interests, I choose to believe them. Also, the clerk's description of the second robber (a black male, about 30 years old, heavy build, 200–250 pounds) fits Mr. Ruffin to a tee.

(2) On June 18, 1991, Robertson and Ruffin committed an armed robbery at the Colortyme store, 3505 West Wisconsin Avenue, in Milwaukee. In addition to Robertson's statement that Ruffin committed the Colortyme robbery with him, store employees viewed a lineup and positively identified Ruffin as one of the two robbers. One of the employees stated that Ruffin was the one who was "in her face" and ordered her to get down on the floor.

(3) On August 19, 1991, Robertson and Ruffin committed an armed robbery at the Play It Again Sports store on Brown Deer Road in Milwaukee. Robertson admitted committing the offense and also identified Andre Ruffin as his accomplice. The owner of the store viewed lineup photographs and positively identified Andre Ruffin as one of the two robbers.

So we see that Mr. Ruffin, not counting the bank robbery specifically charged in this case, has committed and been convicted of two robberies and has committed eleven more. By any commonly understood meaning of the term "career criminal," Mr. Ruffin is one. But because he does not have two formal convictions for crimes of violence, he may not be *treated* as a career criminal as that phrase is defined under the federal sentencing guidelines.

Although the court of appeals has made it clear that I cannot treat Mr. Ruffin as if he were a career criminal under the guidelines, I intend to depart upward from criminal history category 4. Placing Mr. Ruffin in category 4 would not adequately reflect the seriousness of his prior criminal conduct.

In the real world of criminal law, not all violations end up in formal convictions. Mr. Ruffin struck a favorable plea agreement in federal court in Ohio in 1983 and in the Wisconsin state circuit court in 1984. He bundled up a package of crimes into two convictions, which saved him time and saved the government money. But he did commit a total of 10 serious crimes. Mr. Ruffin also apparently will never be formally convicted of the Milwaukee robberies at Preuss Florists, Colortyme, or Play It Again Sports in 1991 because Wisconsin has decided that it would be too expensive to bring him back from California (where he is serving the sentence imposed in this case) for trial. Because this scenario is frequently played out, the Federal Sentencing Commission should relax its formula and give more authority to judges to treat people with criminal accomplishments like those of Mr. Ruffin as career criminals. Absent that, I elect to consider Mr. Ruffin's prior criminal conduct that did not result in a formal conviction in moving him up and out of criminal history category 4 under the guidelines.

If formal convictions and mere concurrent sentences had been entered on the 11 crimes that have not been counted, Mr. Ruffin would earn 33 more points under the guidelines. Thirty-three added to the 8 that he has would give him 41 and move him literally and figuratively off the guideline chart. Only a total of 13 points is necessary to place a defendant in the highest category, number 6. But Mr. Ruffin, I think, should not stop at level 6. That would only count 2 of the 11 other crimes that he committed.

In *United States v. Schmude*, 901 F.2d 555 (7th Cir.1990), the court sanctioned "reasonable" departures beyond level 6. If criminal history categories were extended, using a

very generous arithmetic extension of the scheme used in the first six, Mr. Ruffin would be in something like a category 9. That sort of a scheme would look like this.

| Criminal History Category (Criminal History Points) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 0–1 | 2/3 | 4–6 | 7–9 | 10–12 | 13–18 | 19–25 | 26–33 | 34–41 |

The top end of the guideline range for category 6 is 105 months. I think it reasonable to tack on a mere 15 percent to the 105 months to arrive at a more than reasonable "upper limit" to a new range for Mr. Ruffin. Therefore, I add 15 months and put Mr. Ruffin's upper limit at 120 months. A sentence of 120 months for the robbery in this case is, in my view, more than reasonable. A 60–month consecutive sentence is ORDERED on the firearm count. The total sentence, then, will be 15 years, which unfortunately is 12 years less than the sentence I would prefer to order.

In closing, I note one final thing. The court of appeals' decision in this case was written by Judge Frank Easterbrook. Judge Easterbrook is a distinguished judge and a nationally noted scholar of the law. I don't want Judge Easterbrook to be left with an inaccurate impression about one aspect of my handling of this case back in 1992.

In commenting on statements I made during the 1992 sentencing proceeding, Judge Easterbrook observes that I "may have forgotten for a moment the dramatic consequences of the abolition of parole." The judge is wrong. I didn't forget that parole was no longer available. In fact, I considered that parole was not available when I sentenced Mr. Ruffin in 1992. I thought at that time that Mr. Ruffin, for the protection of the community, deserved a sentence that would put him on ice and out of the armed

robbery business until he was about 50 years old.[2] That's no longer possible. And that's regrettable.

An amended judgment of conviction consistent with this decision will be filed.

SO ORDERED.

---

2. Mr. Ruffin went into custody in this case on October 8, 1991, 5 days after the First Wisconsin robbery. His sentence must be credited back to that date. The 15–year sentence I have now imposed means that he will serve time until approximately June 25, 2004, when he will be 41 years old. Given his track record, there is very little here to give one hope that Mr. Ruffin will ever, as the state court judge said in 1984, "conform his life to the rules that all the rest of us have to abide by." My original 27–year sentence would have kept Mr. Ruffin in custody until approximately September 17, 2113, when he would be 50 years old. That would have afforded more protection for the community and would have got Mr. Ruffin to an age where violent criminal activity starts to lose its appeal. That would have been the preferable route to take.